## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                  No. CR 17-0943 JB

HELEN RENTERIA,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Objection to Presentence Report (Sealed), filed November 20, 2020 (Doc. 93)("Objection"). The primary issue is whether the 2-level adjustment for obstruction of justice under § 3C1.1 of the United States Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines") applies to Defendant Helen Renteria's conviction for Count 2, because Renteria absconded while under pretrial supervision. The Court overrules the Objection, and the Court will impose a 2-level adjustment under § 3C1.1, because Renteria willfully obstructed and impeded the administration of justice when she absconded from pretrial supervision and was therefore unavailable for any for court procedures in this case.

## FINDINGS OF FACT

The Court takes its facts from the Plea Agreement, filed September 1, 2020 (Doc. 85), and the Presentence Investigation Report, filed October 30, 2020 (Doc. 91)("PSR").

1.      On March 17, 2017, Renteria and her daughter were traveling on a Greyhound bus in Bernalillo County, in the District of New Mexico. See Plea Agreement ¶ 8, at 4-5; PSR ¶¶ 12, 24, at 4, 6.

2.      In Albuquerque, New Mexico, a Drug Enforcement Administration ("DEA") agent observed Renteria and her daughter deboard and reboard the Greyhound bus; both times Renteria's

daughter was carrying "a light green colored hard-sided suitcase."  PSR ¶¶ 14-15, at 5-6.

3.     The DEA agent entered the Greyhound bus and asked Renteria and her daughter if he could search their belongings.  See PSR ¶ 18, at 5.

4.     Renteria consented to a search of her belongings, but the search did not reveal any illegal narcotics.  See PSR ¶ 18, at 5.

5.     The DEA agent asked to search the green suitcase, but both Renteria and her daughter "denied ownership of the light green, hard-sided suitcase, and the agent determined that both parties disclaimed all interest and ownership to the suitcase."  PSR ¶ 18, at 5.

6.     When the DEA agent searched the green suitcase, he found "several black electrical taped bundles concealed inside of women's clothing."  PSR ¶ 18, at 5.

7.     Based on his training and experience, the DEA agent knew the bundles were consistent with illegal narcotics.  See PSR ¶ 18, at 5.

8.     The bundles "later tested positive for the presence of methamphetamine.  Lab reports indicate [the bundles] contained 9.71 kg of methamphetamine (actual) with a substance purity of 93%."  PSR ¶ 21, at 5.

9.     Renteria and her daughter "were to be compensated for the delivery of the methamphetamine to its final destination in Minneapolis, Minnesota."  PSR ¶ 22, at 5.

10.     On March 21, 2017, Renteria was placed on conditions of release with pretrial supervision to the third-party custody of La Pasada Halfway House in Albuquerque, New Mexico.  See PSR ¶ 9, at 4; Order Setting Conditions of Release, filed March 21, 2017 (Doc. 13)("Conditions for Release I").

11.     On April 11, 2017, the United States filed an indictment, charging Renteria and her daughter  with Count 1: Conspiracy in violation of 21 U.S.C. § 846; and Count 2: Possession with

Intent to Distribute 500 Grams and More of a Mixture and Substance Containing Methamphetamine and Aiding and Abetting in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), (b)(1)(A).  <u>See</u> PSR ¶ 1, at 3; Indictment at 1-2, filed April 11, 2017 (Doc, 15).

12.     On June 22, 2017, Renteria was placed on courtesy supervision in the United States District Court for the Central District of California, and she was allowed to reside with her mother, who served as her third-party custodian.  <u>See</u> PSR ¶ 9, at 4;  Order Granting Defendant's Helen Renteria's Unopposed Motion for Modification of Conditions of Release, filed June 22, 2017 (Doc. 29)("Conditions for Release II").

13.     On November 2, 2017, Renteria's conditions of release were modified to allow her to continue to reside in California, and her mother was removed as the third-party custodian.  <u>See</u> PSR ¶ 9, at 4; Order Granting Defendant's Helen Renteria's Second Unopposed Motion for Modification of Conditions of Release, filed November 2, 2017 (Doc. 35)("Conditions for Release III").

14.     On November 29, 2017, Renteria failed to report to her pretrial officer.  <u>See</u> PSR ¶ 10, at 4.

15.     "Attempts to telephonically contact the defendant were unsuccessful and her telephone went straight to voicemail."  PSR ¶ 10, at 4.

16.     "The defendant failed to return calls left for her on November 29, 2017."  PSR ¶ 10, at 4.

17.     On December 1, 2017, a warrant was issued for Renteria's arrest.  <u>See</u>  PSR ¶ 10, at 4.

18.     More than seventeen months later, on May 13, 2019, Renteria was arrested.  See PSR ¶ 11, at 4.[1]

## LAW REGARDING THE GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States of America severed the mandatory provisions from the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1976, thus making Guidelines sentencing ranges effectively advisory.  In excising the two sections, the Supreme Court left the remainder of the Sentencing Reform Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  United States v. Booker, 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

[A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so

---

[1]Renteria states she "surrendered herself May 13, 2019 to be arrested on the outstanding warrant and has been in custody since."  Objections ¶ 6, at 2.  See Letter, filed November 20, 2020 (Doc. 95-1).

as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551.  To achieve these purposes, § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the offense' nature and the nature of the defendant's character; (iii) the available sentences; (iv) the policy favoring uniformity in sentences for defendants who commit similar crimes; (v) the need to provide restitution to victims; and (vi) any pertinent United States Sentencing Commission policy statements in effect on the date of sentencing.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors which § 3553(a) enumerates, they are entitled to careful consideration.  See Rita v. United States, 551 U.S. 338, 349 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses."  United States v. Cage, 451 F.3d at 593 (internal quotation marks omitted)(quoting United States v. Terrell, 445 F.3d 1261, 1265 (10th Cir. 2006)).  A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a).  See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. at 349, as recognized in United States v. Zamora-Solorzano, 528 F.3d 1247, 1251 n.3 (10th Cir. 2008). This presumption, however, is an appellate presumption, and not one that the trial court can or should apply. See Gall v. United States, 552 U.S. 38, 46-47 (2007); Kimbrough v. United States, 552 U.S. 85, 90-91 (2007); Rita v. United States, 551 U.S. at 351. Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory[2] Guidelines sentence. See Rita v. United States, 551 U.S. at 351; Gall v. United States, 552 U.S. at 46-47; Kimbrough v. United States, 552 U.S. at 90-91.

While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first

---

[2]Attorneys and courts often say that the "Guidelines" are advisory, but it appears more appropriate to say that the resulting Guidelines ranges are advisory. Gall v. United States, 552 U.S. at 46 ("As a result of our decision [in United States v. Booker], the Guidelines are now advisory . . . ."); United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)(unpublished)("[T]he Guidelines are advisory, not mandatory."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory."). The Court must consider the Guidelines, see Gall v. United States, 552 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, see Gall v. United States, 552 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."). The Court is not mandated, however, to apply a sentence within the calculated Guidelines range. See United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-Booker have discretion to assign sentences outside of the Guidelines-authorized range . . . ."). Accord United States v. Chavez-Rodarte, No. CR 08-2499 JB, 2010 WL 3075285, at *2-3 (D.N.M. July 16, 2010)(Browning, J.).

    The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole.

task remains to accurately and correctly determine the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's <u>Booker</u> arguments, the sentencing court must first determine whether the defendant is entitled to downward departures. The sentencing court may, however, also use these same departure factors in the <u>Booker</u> calculus, even if the court does not grant a downward departure.

<u>United States v. Apodaca-Leyva</u>, No. CR 07-1479 JB, 2008 WL 2229550, at *6 (D.N.M. Feb. 13, 2008)(Browning, J.). The Supreme Court has recognized, however, that sentencing judges are "in a superior position to find facts and judge their import under § 3553(a) in each particular case."

---

The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).

. . . .

The Supreme Court held in <u>United States v. Booker</u> that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in <u>Kimbrough v. United States</u> that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. 85, 101 (2007)(alteration in original)(internal quotation marks omitted). In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield. In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their <u>United States v. Booker</u>-granted authority to post-Guidelines analysis "variances." <u>Irizarry v. United States</u>, 553 U.S. 708, 710-16 (2008). A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably. <u>See</u> <u>Gall v. United States</u>, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, <u>such as failing to calculate (or improperly calculating) the Guidelines range</u>, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

<u>United States v. Nolf</u>, 30 F. Supp. 3d 1200, 1222-24, (D.N.M. June 20, 2014)(Browning, J.)(emphasis in original).

Kimbrough v. United States, 552 U.S. at 89.   Applying § 3553(a)'s factors, the Court has concluded that the case of an illegal immigrant who re-entered the United States to provide for his two children and two siblings was not materially different from other re-entry cases, and, thus, no variance from the Guidelines sentence was warranted.   See United States v. Almendares-Soto, No. CR 10-1922 JB, 2010 WL 5476767, at *12 (D.N.M. Dec. 14, 2010)(Browning, J.).   On the other hand, in United States v. Jager, No. CR 10-1531 JB, 2011 WL 831279 (D.N.M. Feb. 17, 2011)(Browning, J.), although the defendant's military service was not present to an unusual degree and, thus, did not warrant a departure, the Court concluded that a variance was appropriate, because the defendant's military service was "superior and uniformly outstanding," as the defendant appeared to have been "trustworthy[] and dedicated, and he served with distinction." 2011 WL 831279, at *14.

## LAW REGARDING THE BURDEN OF PROOF REQUIRED FOR ENHANCEMENTS UNDER THE GUIDELINES

In Apprendi v. New Jersey, 530 U.S. 466 (2000)("Apprendi"), the Supreme Court reaffirmed the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment within the range prescribed by statute."  530 U.S. at 481.  The Supreme Court cautioned, however, that the Constitution of the United States of America limits this discretion and the Sixth Amendment to the Constitution requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Apprendi, 530 U.S. at 490.  In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court elaborated on its holding in Apprendi, stating that the "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the

defendant." Blakely v. Washington, 542 U.S. at 303 (emphasis and citations omitted).  In United States v. Booker, however, the Supreme Court held that, because the sentencing guidelines are no longer mandatory, "*Apprendi* does not apply to the present advisory-Guidelines regime."  United States v. Ray, 704 F.3d 1307, 1314 (10th Cir. 2013).  See United States v. Booker, 543 U.S. at 259 ("[W]ithout this provision [of the Guidelines statute] -- namely, the provision that makes the relevant sentencing rules mandatory and imposes binding requirements on all sentencing judges -- the statute falls outside the scope of *Apprendi*'s requirement.")(alterations and internal quotations marks omitted).  More recently, the Supreme Court held that the requirements in Apprendi v. New Jersey apply to facts that increase a defendant's mandatory minimum sentence.  See Alleyne v. United States, 570 U.S. 99, 103 (2013).

    In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that Blakely v. Washington and United States v. Booker did not change the district court's enhancement findings analysis.  See United States v. Magallanez, 408 F.3d at 684-85.  United States v. Magallanez involved plain-error review of a drug sentence in which a jury found the defendant guilty of conspiracy to possess with intent to distribute, and of distributing, methamphetamine.  See 408 F.3d at 676.  As part of its verdict, the jury, through a special interrogatory, attributed to the defendant 50-500 grams of methamphetamine; at sentencing, however, the judge -- based on testimony of the various amounts that government witnesses indicated they had sold to the defendant -- attributed 1200 grams of methamphetamine to the defendant and used that amount to increase his sentence under the Guidelines.  See 408 F.3d at 682. The district court's findings increased the defendant's Guidelines sentencing range from 63 to 78 months to 121 to 151 months.  See 408 F.3d at 682-83.  On appeal, the Tenth Circuit stated that, both before and after Congress' passage of the Sentencing Reform Act, "sentencing courts

maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict." 408 F.3d at 684. Although <u>United States v. Booker</u> made the Guidelines ranges "effectively advisory," the Tenth Circuit reaffirmed that "district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before." <u>United States v. Magallanez</u>, 408 F.3d at 685 (citation omitted).

The Tenth Circuit, while "recognizing 'strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof,'" has "long held that sentencing facts in the 'ordinary case' need only be proven by a preponderance." <u>United States v. Olsen</u>, 519 F.3d 1096, 1105 (10th Cir. 2008)(quoting <u>United States v. Washington</u>, 11 F.3d 1510, 1516 (10th Cir. 1993)).[3] "[T]he application of an enhancement . . . does not implicate

---

[3]Although the Tenth Circuit stated in <u>United States v. Washington</u> that "the issue of a higher than a preponderance standard is foreclosed in this circuit," 11 F.3d at 1516, the Tenth Circuit has since classified its holding as leaving "open the possibility that due process may require proof by clear and convincing evidence before imposition of a Guidelines enhancement that increases a sentence in an 'extraordinary or dramatic' amount," <u>United States v. Ray</u>, 704 F.3d at 1314 (quoting <u>United States v. Olsen</u>, 519 F.3d at 1105). <u>See United States v. Olsen</u>, 519 F.3d at 1105 (affirming the use of the preponderance-of-the-evidence standard for sentencing facts that increase a sentence in the "'ordinary case'" (quoting <u>United States v. Washington</u>, 11 F.3d at 1516)). The Tenth Circuit has not yet found that an "extraordinary or dramatic" instance warrants a higher standard of proof for certain facts that enhance a defendant's sentence. <u>United States v. Olsen</u>, 519 F.3d at 1105 (explaining that it need not determine whether a higher standard of proof is required to sentence a defendant for committing perjury in relation to a grand jury investigation, because the enhancement did not require the district court to determine that the defendant committed murder, but only that he obstructed a homicide investigation). <u>See United States v. Constantine</u>, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)(affirming a preponderance-of-the-evidence standard for facts that enhance a defendant's offense level 4 levels); <u>United States v. Valdez</u>, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000)(rejecting the defendant's argument that a dramatic increase in a sentence because of a sentencing judge's finding of additional amounts of methamphetamine associated with acquitted charges entitled the defendant to a clear-and-convincing evidence standard at sentencing, and noting that the Tenth Circuit "foreclosed by binding precedent" this argument); <u>United States v. Washington</u>, 11 F.3d at 1516 (finding that a district court need not find by any more than a preponderance of the evidence the amount of

the Supreme Court's holding in Apprendi v. New Jersey."  United States v. Reyes-Vencomo, No. CR 11-2563 JB, 2012 WL 2574810, at *3 (D.N.M. June 26, 2012)(Browning, J.).  The Tenth Circuit applies Apprendi v. New Jersey's requirement that a fact be submitted to a jury only where the fact would increase a defendant's sentence "above the statutory maximum permitted by the statute of conviction."  United States v. Price, 400 F.3d 844, 847 (10th Cir. 2005).  Accord United States v. Ray, 704 F.3d at 1314.  A defendant may assert an error under Apprendi v. New Jersey only where the fact at issue increased his sentence beyond the statutory maximum.  See United States v. O'Flanagan, 339 F.3d 1229, 1232 (10th Cir. 2003)(holding that a defendant could not assert an error under Apprendi v. New Jersey, because "his sentence does not exceed the statutory maximum"); United States v. Hendrickson, 592 F. App'x 699, 705 (10th Cir. 2014)(unpublished) (holding that, after Alleyne v. United States, "[i]t is well-established that sentencing factors need not be charged in an indictment and need only be proved to the sentencing judge by a preponderance of the evidence").[4]  The Court has noted:

---

cocaine a defendant distributed, even though its findings increased the defendant's sentence from twenty years to consecutive forty-year terms).

    [4]United States v. Hendrickson is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . [a]nd we have generally determined that citation to unpublished opinions is not favored.  However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that United States v. Hendrickson, United States v. Salazar, 446 F. App'x 110, 112 (10th Cir. 2011), and United States v. Leroy, 298 F. App'x 711 (10th Cir. 2008), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

[A]lthough the decision of the Supreme Court of the United States in <u>Alleyne v.</u> <u>United States</u>, . . . 133 S. Ct. 2151 . . . (2013), expands the rule from <u>Apprendi v.</u> <u>New Jersey</u>, 530 U.S. 466 . . . (2000)(holding that facts that increase the maximum sentence a defendant faces must be proven to a jury beyond a reasonable doubt), to cover facts that increase the mandatory minimum sentence, as well as the maximum sentence, it does not prohibit district judges from continuing to find advisory sentencing factors by a preponderance of the evidence.  See [<u>United States v.</u> <u>Sangiovanni</u>,] 2014 WL 4347131, at *22-26 [(D.N.M. 2014)(Browning, J.)].

<u>United States v. Cervantes-Chavez</u>, No. CR 14-0259 JB, 2014 WL 6065657, at *14 (D.N.M. Nov. 3, 2014)(Browning, J.).

## LAW REGARDING U.S.S.G. § 3C1.1

Section 3C1.1 states:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1.  The application notes state: "Obstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by this guideline if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction."  U.S.S.G. § 3C1.1, Application Note 1.

The application notes to § 3C1.1 provide a non-exhaustive list of conduct that warrants the upward adjustment.  See U.S.S.G. § 3C1.1, Application Note 4.

> **4.**   **Examples of Covered Conduct. --** The following is a non-exhaustive list of examples of the types of conduct to which this enhancement applies:
>
> **(A)**   threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so;
>
> **(B)**   committing, suborning, or attempting to suborn perjury, including during the course of a civil proceeding if such

perjury pertains to conduct that forms the basis of the offense of conviction;

**(C)**    producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding;

**(D)**    destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding (e.g., shredding a document or destroying ledgers upon learning that an official investigation has commenced or is about to commence), or attempting to do so . . .

**(E)**    escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered, for a judicial proceeding;

**(F)**    providing materially false information to a judge or magistrate judge;

**(G)**    providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense;

**(H)**    providing materially false information to a probation officer in respect to a presentence or other investigation for the court;

**(I)**    other conduct prohibited by obstruction of justice provisions under Title 18, United States Code (e.g., 18 U.S.C. §§ 1510, 1511);

**(J)**    failing to comply with a restraining order or injunction issued pursuant to 21 U.S.C. 853(e) or with an order to repatriate property issued pursuant to 21 U.S.C. 853(p);

**(K)**    threatening the victim of the offense in an attempt to prevent the victim from reporting the conduct constituting the offense of conviction.

U.S.S.G. § 3C1.1, Application Note 4 (bold in the original).

The application note also lists a number of acts that do not normally trigger the enhancement.

**5.**     **Examples of Conduct Ordinarily Not Covered.** -- Some types of conduct ordinarily do not warrant application of this adjustment, but may warrant a greater sentence within the otherwise applicable guideline range or affect the determination of whether other guideline adjustments apply (e.g., § 3E1.1 (Acceptance of Responsibility)). . . .

The following is a non-exhaustive list of examples of the types of conduct to which this application note applies:

    **(A)**     providing a false name or identification document at arrest, except where such conduct actually resulted in a significant hindrance to the investigation or prosecution of the instant offense;

    **(B)**     making false statements, not under oath, to law enforcement officers, unless Application Note 4(G) above applies;

    **(C)**     providing incomplete or misleading information, not amounting to a material falsehood, in respect to a presentence investigation;

    **(D)**     avoiding or fleeing from arrest (see, however, § 3C1.2) (Reckless Endangerment During Flight);

    **(E)**     lying to a probation or pretrial services officer about defendant's drug use while on pre-trial release, although such conduct may be a factor in determining whether to reduce the defendant's sentence under § 3E1.1 (Acceptance of Responsibility).

U.S.S.G. § 3C1.1, Application Note 5 (bold in the original).

In United States v. Farnsworth, 92 F.3d 1001 (10th Cir. 1996), the Tenth Circuit recognized that an attempt to influence a witness by instructing the witness to lie warrants an enhancement under § 3C1.1. See 92 F.3d at 1011. The Tenth Circuit remanded the case to the district court, however, because the district court did not make a specific finding as to the issue, instead doing no more than adopting "the analysis of the Probation Department as accurate and correct." United States v. Farnsworth, 92 F.3d at 1011. In United States v. Yuselew, No. CR 09-1035 JB, 2010 WL 3834418 (D.N.M. Aug. 5, 2010)(Browning, J.), the Court held that, "to warrant application of

the § 3C1.1 enhancement, the defendant must have deliberately -- not accidentally, incidentally, or mistakenly -- done some act with the specific purpose of thwarting the investigation and prosecution." 2010 WL 3834418, at *12. The Court also found that attempts to obstruct justice may be sufficient if the acts were of a kind that were likely to thwart the investigation and eventual prosecution. See United States v. Yuselew, 2010 WL 3834418, at *13.

The enhancement applies even for attempted obstruction of justice if the United States demonstrates that the defendant intended to obstruct justice and that the defendant committed an act that constitutes a substantial step toward the obstruction of justice. See United States v. Fleming, 667 F.3d at 1107. Moreover, a "defendant's offense level is enhanced by two levels for attempted obstruction of justice when the Government demonstrates that the defendant: (1) intended to obstruct justice, and (2) committed an act that constitutes a substantial step toward the obstruction of justice." United States v. Fleming, 667 F.3d at 1107 (citing United States v. Washington, 653 F.3d 1251, 1264 (10th Cir. 2011)).

> A substantial step must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime. . . . Whether a defendant's actions amount to an attempt, and, in particular, whether his actions qualify as a substantial step, is a highly fact-specific inquiry.

United States v. Washington, 653 F.3d at 1264.

## ANALYSIS

The Court overrules the Objection, because Renteria "willfully obstructed and impeded . . . the administration of justice" when she absconded from pretrial supervision, and she, therefore, was unavailable for any court procedures in this case. U.S.S.G. § 3C1.1. Section 3C1.1 provides:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any

- 15 -

relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1.  Application Note 3 explains:

Obstructive conduct can vary widely in nature, degree of planning, and seriousness. Application Note 4 sets forth examples of the types of conduct to which this adjustment is intended to apply. . . .   Although the conduct to which this enhancement applies is not subject to precise definition, comparison of the examples set forth in Application Notes 4 . . . should assist the court in determining whether application of this adjustment is warranted in a particular case.

U.S.S.G. § 3C1.1, Application Note 3.  Application Note 4(E) of the Commentary to § 3C1.1 provides: "Examples of Covered Conduct. -- The following is a non-exhaustive list of examples of the types of conduct to which this adjustment applies[:] . . . escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered, for a judicial proceeding . . . ."  U.S.S.G. § 3C1.1, Application Note 4(E).   "Absconding," which the Tenth Circuit has defined in the context of U.S.S.G. § 3C1.1 as "'to leave hastily and secretly, especially to escape the law,'" United States v. Williams, 374 F.3d 941, 947 (10th Cir. 2004)(quoting Webster's New World Dictionary (rev. ed. 2003)), amounts to an obstruction of justice, see United States v. Williams, 374 F.3d 941, 947-48 (10th Cir. 2004)("[The defendant] absconded and his conduct amounted to an obstruction of justice.   To hold otherwise would condone direct disobedience of a court's . . . order.").  See also United States v. Salazar, 446 F. App'x 110, 112 (10th Cir. 2011)("By absconding, [the defendant] missed his scheduled sentencing hearing. This brings his conduct within a straightforward reading of comment 4(E) of USSG § 3C1.1."); Valdez-Borja v. United States, No. CR 16-3390 KG, 2020 WL 601962, at *6 (D.N.M. Feb. 7, 2020)(Khalsa, M.J.)(concluding that the defendant "chose to obstruct justice by absconding from supervision and failing to make himself available for his sentencing as originally scheduled"), report and recommendation adopted, 2020 WL 1033281 (D.N.M. March 3, 2020); United States

v. Defeo, 36 F.3d 272, 276 (2d Cir. 1994)(holding that failure to report by one released on bond is "comparable to an escape from custody"); United States v. Perry, 908 F.2d 56, 59 (6th Cir. 1990)(applying § 3C1.1 enhancement to defendant who jumped bond). Cf. United States v. Swanson, 253 F.3d 1220, 1223 (10th Cir. 2001)("[The Defendant's] motivations are beside the point, however-the only significant question is whether he willfully fled custody."); United States v. Archuletta, 231 F.3d 682, 686 (10th Cir. 2000)(applying § 3C1.1 enhancement to defendant who fled because believed she was dying); United States v. Amos, 984 F.2d 1067, 1072 (10th Cir. 1993)("[E]scape or attempting escape from custody before trial or sentencing is an example of conduct that warrants the adjustment. Nothing more is required."); United States v. Aponte, 31 F.3d 86, 88 (2nd Cir. 1994)("It is sufficient . . . that the defendant intended to fail to appear at a judicial proceeding, regardless of his reason for desiring to flee.")

Renteria objects to the imposition of the 2-level adjustment under § 3C1.1, because "[t]here w[]ere no judicial proceedings for which Ms. Renteria failed to appear during the time the warrant was active." Objection ¶ 7, at 2. The Court disagrees, and overrules the Objection, because Renteria does not dispute that she absconded for over seventeen months while on supervised release, see Objection at ¶¶ 1, 4-8, at 1, 2, and was, therefore, unavailable for any court procedures. On November 29, 2017, when Renteria absconded, there was a jury trial set for January 16, 2018, see Order to Continue at 1, filed November 29, 2017 (rescheduling trial for January 16, 2018), and she was subject to release conditions that included requirements: "The defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number," and "[t]he defendant must appear in court as required . . . ," Conditions of Release I at 1; see Order Granting Defendant's Helen Renteria's Second Unopposed Motion for Modification of Conditions of Release, filed November 2, 2017 (Doc. 25).

Accordingly, the Court concludes that Renteria "willfully obstructed or impeded . . . the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of convict," U.S.S.G. § 3C1.1, when she absconded, because a jury trial was scheduled in a couple of months, an arrest warrant was issued on December 1, 2017, and she did not surrender herself to be arrested until May, 13, 2020.  See Order to Continue at 1; Conditions of Release I at 1; PSR ¶ 23, at 6.  "To hold otherwise would condone direct disobedience of a court's . . . order." United States v. Williams, 374 F.3d at 947-48.  See, e.g., United States v. Salazar, 446 F. App'x at 112 ("By absconding, [the defendant] missed his scheduled sentencing hearing[;]  [t]his brings his conduct within a straightforward reading of comment 4(E) of USSG § 3C1.1."); Valdez-Borja v. United States, No. CR 16-3390 KG, 2020 WL 601962, at *6 (concluding that the defendant "chose to obstruct justice by absconding from supervision and failing to make himself available for his sentencing as originally scheduled").

Renteria also argues that "[u]nder the plain reading of . . . application note [4(E),] Ms. Renteria was not in custody at the time she stopped reporting to Pre-Trial . . . ."  Objection ¶ 2, at 2.  Renteria posits that "[s]ince Ms. Renteria was not in custody as required by **USSG ¶3C1.1** then that adjustment does not apply and must not result in an increase in offense level."  Objection ¶ 9, at 3 (bold in the Objection).  First, § 3C1.1 does not require that the defendant be in custody, because § 3C1.1 does not use the word custody, see U.S.S.G. § 3C1.1; second, although Application Note 4(E) uses as an example "escaping or attempting to escape from custody before trial or sentencing," as Renteria concedes, this only a non-binding, "non-exhaustive example" of "covered conduct,"  U.S.S.G. § 3C1.1, Application Note 4(E); and third, even if "custody" is required, the Court concludes that Renteria "escap[ed] . . . from custody" for purposes of the Guidelines, U.S.S.G. § 3C1.1, Application Note 4(E).   Renteria relies on the Tenth Circuit's

decision in United States v. Swanson, which recognized "definition of 'custody' under a guidelines analysis may be broader than the definition of 'custody' needed to support the substantive charge of felony escape." United States v. Swanson, 253 F.3d at 1224. The Tenth Circuit "h[eld] that escape from a halfway house is 'escape from custody' for purposes of section 3C1.1." United States v. Swanson, 253 F.3d at 1224. Renteria argues that she "was not required to reside at a halfway house and was not subject to restrictions described in **Swanson.** The facts in this matter do not meet the definition of in custody as laid out in **USSG ¶3C1.1** and they do not meet the plain definition of custody." Objection ¶ 11, at 3 (emphasis in the Objection). United States v. Swanson cuts against Renteria's argument, however, because the Tenth Circuit stated that the definition of custody under § 3C1.1 is "broad," and recognized that "other circuits have held that failure to report by one released on bond is 'comparable to an escape from custody' as well." United States v. Swanson, 253 F.3d at 1224 (citing United States v. Defeo, 36 F.3d at 276; United States v. Perry, 908 F.2d at 59). For example, the United States Court of Appeals for the Second Circuit held: "Flight from pretrial services between conviction and sentencing warrants an obstruction enhancement." United States v. Defeo, 36 F.3d at 276. The Second Circuit explained:

> [The Defendant] had been released from custody on the conditions that she undergo rehabilitation for drug use, engage in no unlawful conduct, and report regularly for testing to permit verification that she had stopped using drugs. According to her own testimony, she absconded in February 1993 precisely in order to prevent her release conditions from being enforced. And plainly her attempt to smuggle into the pretrial services office an uncontaminated urine sample to be submitted in place of her own revealed her effort to prevent detection of her violation of the conditions of release. We see no error in the two-step increase in offense level for obstruction of justice.

United States v. Defeo, 36 F.3d at 277. Similarly, the United States Court of Appeals for the Sixth Circuit held that a 2-level adjustment was appropriate where a Defendant "jumped bond before

sentencing and was not apprehended until the better part of a year had passed." United States v.

Perry, 908 F.2d at 59.  The Sixth Circuit explained:

> Although no sentencing date had been set when [the Defendant] fled, he admits that
> he had been instructed to report to the probation officer and failed to do so.  [The
> Defendant] offers no principled reason why his flight, which delayed his sentencing
> by some eight months, should not be considered to have "impeded" the
> administration of justice in the course of the prosecution.
>
> . . .
>
> That a sentencing date had not been set is also irrelevant.  [The Defendant]
> was no stranger to the criminal justice system, and he can doubtless be presumed
> to have known that he was not free to decamp after his conviction.  It is enough, in
> any event, that he disobeyed an instruction to report to the probation officer.

United States v. Perry, 908 F.2d at 59.  Both the Second and Sixth Circuit cases, which the Tenth

Circuit relied on in United States v. Swanson, are analogous to Renteria's situation, and support

the Court's conclusion that absconding while on supervised release equates to "escaping . . . from

custody before trial or sentencing" under Application Note 4(E), because Renteria failed to report

to her probation officer and delayed the scheduled trial date for over seventeen months.  U.S.SG.

§ 3C1.1, Application Note 4(E).  See United States v. Defeo, 36 F.3d at 277; United States v.

Perry, 908 F.2d at 59.  Furthermore, the United States Court of Appeals for the Ninth Circuit

concluded that the definition of "custody" under the guidelines was broad enough to encompass a

defendant "[a]bsconding from pretrial release," because,

> for purposes of the obstruction guideline, "custody" need only involve some degree
> of official control over a defendant such that a subsequent evasion amounts to more
> than mere "avoiding or fleeing from arrest."  Stated differently, the defendant must
> have been submitted, willfully or otherwise, to the due process of law before the
> obstruction adjustment can obtain.

United States v. Draper, 996 F.2d 982, 985-86 (9th Cir. 1993).  Here, Renteria had been arrested,

was subject to conditions of release, had a trial date set for January 16, 2018, and had thus

"submitted . . . to the due process of law," United States v. Draper, 996 F.2d at 86; therefore, for

purposes of § 3C1.1, Renteria "escap[ed] . . . from custody," U.S.S.G. § 3C1.1, Application Note 4(E), and a 2-level adjustment is appropriate.

      **IT IS ORDERED** that the Defendant's Objection to Presentence Report (Sealed), filed November 20, 2020 (Doc. 93), is overruled.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

John C. Anderson
  United States Attorney
Presiliano Torrez
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Barrett (Barry) George Porter
Burgess and Porter Law, LLC
Albuquerque, New Mexico

     *Attorney for the Defendant*